**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JODY TALLBEAR,<br>3001 PARK CENTER DRIVE, APT. 416<br>ALEXANDRIA, VA 22302 | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:17-cv-00025 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ERNEST MONIZ, IN HIS OFFICIAL CAPACITY<br>AS SECRETARY OF THE UNITED STATES<br>DEPARTMENT OF ENERGY,<br>1000 INDEPENDENCE AVE. SW<br>WASHINGTON, DC 20585 | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## <u>COMPLAINT</u>

Plaintiff Jody TallBear, by and through her attorneys, for her complaint against her employer, the United States Department of Energy ("DOE"), respectfully alleges and states as follows:

### INTRODUCTION

Ms. TallBear is an exemplary and accomplished Native American DOE employee, who has been punished for doing her job. This civil rights complaint seeks to redress the callous attitude of DOE towards Native American peoples and to stop the discrimination that Ms. TallBear has endured while employed there. Ms. TallBear is a Native American woman who has dedicated her federal employment career to engaging Native American and Tribal communities in DOE programs and in the broader energy sector. In fact, she was hired into the DOE Office of Economic Impact and Diversity (ED) in May 2011 in large part for her ability to engage

tribal/Native American stakeholders on energy issues. In 2012 her supervising Director expanded this mission to include other minority groups as well as leading ED on other organization-wide policy initiatives.

As the senior policy advisor to the ED Director who leads several DOE offices, including DOE's Office of Diversity and Inclusion and Office of Civil Rights, Ms. TallBear understood that she could lead positive change within the DOE organization. In addition to focusing on energy policy and stakeholder engagement, Ms. TallBear undertook efforts to further ED's responsibility to implement the goals contained in Executive Order 13583 to establish a coordinated government-wide initiative to promote diversity and inclusion in the federal workplace and to raise awareness of Native American culture and sensitivities. Ms. TallBear also recognized the scarcity of Native American employees at DOE and the pervasive stereotypical images and racial slurs related to Native Americans represented and promoted by the Washington Redskins paraphernalia in her workplace. As part of her DOE mission, she attempted through presentations to DOE and to other federal agencies and in other ways to raise an awareness of the harm caused to Native Americans by the stereotypical images of Native Americans, such as Indian mascot portrayals, and the disparaging slur "redskin," which is directly tied to the historical bounty hunting of Native Americans.

Despite her efforts, in the nearly six years Ms. TallBear has been employed by DOE in ED, she has been subject to the persistent use of racially offensive language, portrayals, and representations of Native Americans in her workplace.  As a responsible employee, she has followed all appropriate channels to convey the feelings of anxiety and discomfort that this exposure causes for her and to encourage her DOE leadership to take some steps to ameliorate this hostile work environment for Native Americans like herself. But DOE leadership, including

its Office of General Counsel, feigned an inability to take any steps, even sensitivity training, because it could not find a basis for a legal ban.

But whether the mascot image or term and use of "redskin" in paraphernalia can be legally banned should not prevent a federal agency from promoting sensitivity training regarding the very real demoralizing impact this term and imagery has on many Native Americans. In October 2015 DOE's General Counsel banned Ms. TallBear from educating DOE employees on Native American sensitivities related to the "Redskins" mascot and racial slur in order to protect the sensitivities of African American, Asian American, and Hispanic American employees, thus resulting in unequal protection for DOE employees based on race and national origin. Around the same time, Ms. TallBear's direct supervisor, who was and is DOE's senior Civil Rights Official and Diversity Official, began retaliating against Ms. TallBear by isolating and ostracizing her for her actions to raise awareness on this issue. Moreover, DOE leadership has blocked several detail requests for Ms. TallBear to join other DOE offices in retaliation for filing an informal complaint of discrimination.

With nowhere else to turn, Ms. TallBear brings this action against DOE for hostile work environment on the basis of race and national origin and retaliation for making a legally protected complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Not only have her concerns and efforts been brushed aside by her colleagues, superiors, and DOE itself for almost six years, but DOE leadership has retaliated against her after her complaints—despite years of exemplary performance and consistently positive reviews—by effectively demoting her, stripping her of her title and the job responsibilities upon which she relied when accepting the position, and derailing her established career path. DOE's discriminatory actions must cease.

## PARTIES

1.      Plaintiff Jody TallBear ("Plaintiff") has at all times relevant to this complaint resided in the DC metropolitan area and has held herself out to be Native American. Moreover, Ms. TallBear is an enrolled member of the Cheyenne-Arapaho Tribes of Oklahoma and eligible for enrollment in the Sisseton Wahpeton Oyate.  Ms. TallBear is, and was at all times relevant to this complaint, employed by the DOE Office of Economic Impact and Diversity in the District of Columbia.

2.      Defendant Ernest Moniz is the Secretary of the United States Department of Energy ("DOE"), a federal government agency with its principal offices located in the District of Columbia.

## JURISDICTION AND VENUE

3.      The unlawful employment practices alleged in this complaint occurred in the District of Columbia.

4.      This Court has jurisdiction and venue over this matter pursuant to 28 U.S.C.§§ 1331, 1343, and 1391(e), and 42 U.S.C. §§2000e-5(f) and 2000e-16(c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Ms. TallBear timely filed an informal complaint on December 10, 2015, and a formal complaint on March 2, 2016. This complaint was forwarded to the United States Department of Justice Federal Bureau of Investigation ("FBI") for investigation because the responsible management official was the director of DOE's Office of Civil Rights, which normally handles discrimination complaints against the agency.

6.      The FBI issued its Report of Investigation ("Report") on September 9, 2016, and Ms. TallBear requested a final decision by DOJ on October 4, 2016. Ms. TallBear has yet to receive a final decision from DOJ.

7.      More than 180 days since the filing of Ms. TallBear's complaint have passed, and no appeal has been filed.

## FACTUAL BACKGROUND

**Ms. TallBear's DOE Experience and Duties**

8.      On May 17, 2011, Plaintiff was hired into the Office of Economic Impact and Diversity ("ED") under the DOE Office of Civil Rights ("OCR") as an Attorney Advisor and reported to Acting Director Bill Valdez of ED. Prior to May 2011, Ms. TallBear had worked for DOE as both a Visiting Fellow and as a contractor in tribal/Native American engagement and energy policy.

9.      Ms. TallBear's professional duties as an Attorney Advisor included high level energy policy and stakeholder engagement. One of the requirements specified in the USA Jobs posting for the position was an expertise in tribal policy and engagement with specific knowledge of Executive Order (EO) 13175 on tribal consultation and EO 13592 on American Indian/Alaska Native education. In fact, from May 2011 until December 2015, Ms. TallBear was the lead for ED's tribal and Native American engagement, programming, and policy, which included representing the DOE at national tribal/Native American gatherings and regular collaboration with the White House, other federal agencies, congressional offices, and national organizations to further the engagement of Native Americans and other minorities in DOE activities and the broader energy sector.

10.     In March 2012, LaDoris "Dot" Harris was confirmed by the United States Senate to serve as Director of the DOE's Office of Economic Impact and Diversity. This position is an Assistant Secretary level position at the DOE and leads DOE's Offices of Minority Economic Impact, Minority Education and Community Development, Minority Business and Economic Development, Diversity and Inclusion, and Civil Rights. In sum, ED Director Harris serves as the senior ranking Civil Rights Official and Diversity Official for the DOE.

11.     Shortly thereafter, Ms. TallBear's duties expanded to include support for ED Director Harris on organization-wide initiatives to meet DOE's statutory mandates and Secretarial directives. That same year, Ms. TallBear was nominated for a Secretary's Honor Award for her work relating to DOE's tribal and Native American outreach and activities.

12.     In 2013, Ms. TallBear was detailed to a new position titled "Strategic Initiatives and Policy Advisor," which directly reported to ED Director Harris and continued in that role until she was offered the position permanently in July 2015 at ED Director Harris' direction. In this position, Ms. TallBear's duties again expanded to lead the origination and development of policy initiatives to further the ED mission. Furthermore, Ms. TallBear worked directly with leaders at strategic levels internal to DOE, across the Federal Government, and within private, academic, and non-profit organizations.

13.     Throughout her tenure at DOE, Ms. TallBear consistently received positive performance reviews and four consecutive ratings of "Significantly Exceeds Expectations," the highest possible rating for a GS-series Federal employee. Since 2011, she has risen from a GS-11 level employee to a GS-15 level employee.

14.     Throughout her employment with DOE, Ms. TallBear has given numerous presentations related to tribal and Native American engagement, including topics on stereotypes,

bias, and racism related to Native Americans. Many of these presentations specifically discussed the controversial use of Indian mascots, including by the National Football League's Washington "Redskins." One of these presentations was given at a quarterly Diversity Managers Training in fall 2011 and was attended by Acting Director Valdez of the DOE Office of Economic Impact and Diversity and Acting Deputy Director Neil Schuldenfrei of the DOE Office of Civil Rights.

15.    On March 29, 2012, Ms. TallBear gave a presentation entitled, "What can a critical look at Indian Mascots teach us about uncovering bias in ourselves and others?" to the Interagency Working Group on Alternative Dispute Resolution, which was attended by ED Acting Director Valdez and Acting Deputy Director Neil Schuldenfrei. Shortly after this presentation, DOE Associate Deputy Secretary Admiral Mel Williams asked that Ms. TallBear brief him on it. Admiral Williams subsequently directed a staff person to identify recommendations to prevent and address these types of stereotypes and bias at DOE, but these recommendations were never carried out.

16.    Until October 2015, Ms. TallBear gave these presentations in her professional capacity as an employee of DOE. In many cases, DOE management was not only aware of but also tacitly approved Ms. TallBear's presentations.

**DOE's Hostile Work Environment**

17.    Beginning in 2011, with the issuance of the *Government-Wide Diversity and Inclusion Strategic Plan* by the Office of Personnel Management (OPM), DOE began to undertake diversity and inclusion efforts in part to ensure that employees feel that "their social identities are appreciated and included in the workplace." DOE's Office of Diversity and Inclusion, which falls under ED, has carried out diversity training since 2011.  This training,

however, has not included cultural sensitivity training or demographic statistics related to Native Americans.

18.     Indian mascots, paraphernalia, and imagery, particularly those using the term "redskins" can be especially offensive and harmful to Native Americans. The term "redskin" was widely used throughout the 18th and 19th centuries to denote the physical proof of kill of a Native American in order for hunters to collect the monetary bounty. Today the term is widely known to be a racial slur.[1] Ms. TallBear has communicated multiple times to DOE leadership that she is deeply offended by the term and its widespread use in the DOE workplace.

19.     Yet the DOE Diversity and Inclusion staff members have been openly dismissive of Native American sensitivities to Indian mascots and even to the inclusion of Native Americans in not only the diversity training, but also in the proactive goals to increase equal opportunity at DOE in its annual MD-715 report to the Equal Employment and Opportunity Commission.

20.     Throughout her tenure at DOE, Ms. TallBear has been repeatedly exposed to "Washington Redskins" paraphernalia, from posters placed in common areas by DOE employees to clothing worn by employees in the workplace and her personal work area and casual and widespread spoken use of the term "redskins" in her presence. DOE also allowed the vendors in its facility, which Ms. TallBear frequented, to post and sell "Redskins" paraphernalia. Several

---

[1] The term (Redskins) originates from a time when Native people were actively hunted and killed for bounties, and their skins were used as proof of Indian kill. Bounties were issued by European companies, colonies, and some states, most notably California. By the turn of the 20th century it had evolved to become a term meant to disparage and denote inferiority and savagery in American Culture. By 1932, the word had been a term of commodification and a commentary on the color of a body part. It was not then, and is not now an honorific. See *Ending the Legacy of Racism in Sports & the Era of Harmful "Indian" Sports Mascots,* page 10, National Congress of American Indians, Position Paper, October 2013. "The State reward for dead Indians has been increased to $200 for every red-skin sent to Purgatory. This sum is worth more than the dead bodies of all the Indians east of the Red River are worth." *The Daily Republican*, 1863.

times each day while in her office building, she is subjected to Indian mascot depictions and heard or read the racial slur "redskins."

21.     On February 7, 2012, Ms. TallBear attended a full-day Leadership Transition Program Training. At the training, the trainer wore a Washington Redskins necktie and the term "redskins" and "skins" was referenced throughout the day.

22.     Moreover, on December 10, 2012, a DOE Office of Civil Rights attorney left a Subway "Redskins Special" flyer on Ms. TallBear's desk.

23.     To this date, Native Americans are not included in the diversity training offered at DOE, and no cultural sensitivity training on these issues has been conducted.

24.     These degrading and harmful images and remarks made Ms. TallBear feel unwelcomed, alienated, and disrespected in her workplace, and caused her to have embarrassing and uncomfortable interactions with her colleagues when raising the discrimination and to feel ashamed and disappointed in herself when she did not do so. Ms. TallBear also realized that she and other Native Americans are not afforded the same protection and consideration as other protected classes. This hostile work environment continues.

**Ms. TallBear's Efforts to Combat the Discrimination**

25.     On March 8, 2013, Ms. TallBear sent a memorandum to ED Director Harris as well as the Deputy Directors for the Office of Diversity and Inclusion and the Office of Civil Rights, in which she expressed concerns regarding the prevalence of Indian mascot depictions and the systemic and pervasive use of the term "redskin" in the DOE workplace. Ms. TallBear asserted that DOE was creating and fostering a hostile work environment for herself and other Native Americans and described consistent and severe feelings of discomfort, exclusion, discrimination, depression, embarrassment, and anxiety.

26.     That same day, Ms. TallBear met with then-acting Deputy Director Schuldenfrei of the Office of Civil Rights to discuss the same issues she had raised in the memorandum. Deputy Director Schuldenfrei intimated that the DOE Office of Diversity and Inclusion had dismissed Ms. TallBear's concerns regarding prevalence of the mascot and use of the term "redskins" within the workplace.

27.     On May 21, 2013, Ms. TallBear followed up with ED Director Harris and Deputy Director Michael Colbert of the Office of Diversity and Inclusion by email, in which she reiterated her concerns and urged the Office of Diversity Programs to foster inclusion and cultural understanding by prohibiting stereotypical images and racial slurs in the workplace.

28.     On June 7, 2013, DOE's Office of General Counsel sent guidance to Deputy Director Colbert regarding Ms. TallBear's complaints about the prevalence of material offensive to Native Americans within the workplace. The Office of General Counsel found no legal basis to ban such paraphernalia and commented that while DOE could provide sensitivity training, such training was not advised at that time. It further suggested that the Office of Personnel Management ("OPM") or the Equal Employment Opportunity Commission ("EEOC") would be the appropriate federal agency to initiate any action regarding Ms. TallBear's concerns.

29.     In accordance with the DOE Office of General Counsel's suggestion, on October 10, 2013, Ms. TallBear sent a memorandum to both the EEOC and OPM Director Elaine Kaplan outlining concerns with the prevalence of Indian mascots in the workplace. Ms. TallBear received no response from EEOC or OPM Director Kaplan.

30.     On June 13, 2014, Ms. TallBear wrote another memorandum to the newly-appointed OPM Director Katherine Archuleta, in which she again complained of forced exposure to the term "redskin" and stereotypical Indian mascots in the workplace. Ms. TallBear complained that repeated exposure to the derogatory term and racist imagery from the team mascot caused her to feel unwelcome, alienated, and disrespected as a Native American.

31.     On November 2, 2014, Ms. TallBear wrote a letter to U.S. Commission on Civil Rights (USCCR) Staff Director Marlene Sallo expressing her concern about the prevalence of racist imagery and terms related to Native Americans in her workplace. Ms. TallBear asked for guidance on how to "advance a conversation and action on this issue other than filing a formal complaint for hostile work environment." Ms. TallBear never received a response from the USCCR.

32.     After repeatedly prompting these federal agencies for action, on December 16, 2014, OPM Director Veronica Villalobos of the Office of Diversity and Inclusion responded that there was no legal basis for banning Indian mascot paraphernalia, but noted that it did not have the authority to advise her on employment discrimination claims.

33.     In February 2015, Ms. TallBear met with OPM Director Villalobos who suggested that Ms. TallBear give a presentation that included sensitivity training on the "redskins" issue to the Agency Strategic Partnership Quarterly Meeting of Agency Diversity Leaders. Ms. TallBear gave this presentation on September 30, 2015.

34.     Between March 2015 and October 2015, Ms. TallBear was asked by several federal agencies to speak at their upcoming Native American Heritage Month events. These agencies included the Drug Enforcement Agency, NASA, Veterans Affairs, Corporation for National Community Service, USAID, and the US Commission on Civil Rights. Ms. TallBear's presentation for these events was intended to educate employees on Native American perspectives and discuss the use of Native Americans as mascots with comparisons to other ethnic groups as mascots. Ms. TallBear accepted these invitations in her official capacity because the promotion of civil rights and workplace diversity efforts, including the fostering of an inclusive and respectful environment for Native Americans in the federal workplace, were within the mission of ED.

**DOE Retaliates Against Ms. TallBear**

35.     On October 23, 2015, Ms. TallBear notified ED Director Harris that she had accepted these speaking engagements at other federal agencies for Native American Heritage Month in November, as she had done in the past two years. Ms. TallBear informed ED Director Harris that the remarks and presentation would discuss the challenges to achieving Native American inclusion in the federal workplace and would discuss the stereotypical depictions of Native Americans in mainstream culture including sports team's mascots.

36.     In response to Ms. TallBear's notification of the planned speaking engagements, ED Director Harris responded with disdain, stating "I don't want. . . my role as Director at jeopardy because you went off speaking regarding controversial issues. . . . This is no different than if I had one of our LGBT employees speaking regarding on a controversial issue . . . or an African American speaking regarding the confederate flag. . . ."

37.     On October 26, 2015, ED Director Harris notified Ms. TallBear that although she had "no concern about [her] performance" and had done "an outstanding job," her attendance at the Federal Executive Institute training, which ED Director Harris had approved on August 2015 and in which Ms. TallBear was enrolled for January 2016, would be postponed until further notice. ED Director Harris stated that Ms. TallBear "need[ed] areas of improvement" and that "there are teachable moments recently."

38.     The Federal Executive Institute training, which prepares high-level employees to enter the Senior Executive Service, has not been rescheduled. Ms. TallBear's career goal since becoming a federal employee has been to join the Senior Executive Service.

39.     On or around October 27, 2015, ED Director Harris also began removing Ms. TallBear from her policy lead position and stripping her of a leadership role with DOE. ED Director Harris also began to exclude Ms. TallBear from meetings, briefings with senior leadership or other offices, and similar assignments that she had handled for the last several years and that fell within the scope of her job duties.

40.     Since notifying Director Harris of her speaking engagements, Ms. TallBear has not been allowed to accept any official speaking engagements or to take official travel to represent DOE at national conferences and other gatherings to conduct stakeholder engagement, which has been a primary duty for her position since joining DOE. Prior to this systematic removal of Ms. TallBear's leadership duties, Ms. TallBear traveled between 10-15 times per year.

41.     On October 29, 2015, Ms. TallBear was advised by DOE Deputy General Counsel for General Law Susan Beard that her planned speaking engagements for Native American Heritage month could not be given in her official capacity as a DOE employee and

that she must take personal leave and disassociate herself from DOE when speaking at the events. Deputy General Counsel Beard acknowledged that Indian mascot portrayals are prevalent at DOE but stated DOE would do nothing to address it because "two wrongs don't make a right" and allowing Ms. TallBear to make a presentation showing other ethnic groups as mascots could "open the agency up to litigation." This stance to ban Ms. TallBear's attempt to educate employees on the harm caused to Native Americans by Indian mascots and other stereotypical images in order to protect non-Native American employees from being offended creates a hierarchy of concern and civil rights protection.

42.     In November 2015, Ms. TallBear further learned that many of the responsibilities she had fulfilled over the past few years as the "Strategic Initiatives and Policy Advisor" (both as a detail and permanent position) were to be reassigned to another newer and less experienced staff person at the direction of ED Director Harris. This new position did not actually cover all of Ms. TallBear's responsibilities, but even those responsibilities that were covered were forsaken in February 2016 when the new staff person resigned. DOE currently has no one assigned to Ms. TallBear's prior duties.

43.     On December 7, 2015, Ms. TallBear was formally notified that she would be stripped of her organizational title as "Strategic Initiatives and Policy Advisor" and would no longer be a direct report to ED Director Harris. Instead, she was reassigned to the Office of Civil Rights to process Title VII complaints, with which she had no prior experience. This reassignment was a de facto demotion in both the complexity of work performed and the level of influence and responsibility within DOE. The new focus was a complete shift from Ms. TallBear's previous role and dramatically altered the conditions of her employment.

44.     Following this de facto demotion and reassignment, Ms. TallBear has tried to mitigate the damage to her career by seeking out detail opportunities with energy policy offices. Although multiple offices have offered to bring her in on detail at no charge to ED between February 2016 and July 2016, ED Director Harris has either denied or directed others to deny the requests. Additionally, on February 19, 2016, the Office of General Counsel – Litigation, intervened in one detail discussion and declined it because Ms. TallBear had filed an informal complaint about her hostile work environment and the retaliation she was experiencing.

45.     Still, DOE has continued to retaliate against Ms. TallBear by excluding her from meetings and activities where her expertise and knowledge are required to meet mission objectives, declining to allow her detail to other energy policy offices, and otherwise isolating her from nearly all DOE activities. Among other actions, on February 26, 2016, Director Harris invited a total of 14 people, including new staff people lacking historical knowledge, to a meeting to discuss the creation of a report of all Director Harris' accomplishments since joining DOE and excluded Ms. TallBear who had led many of ED's major initiatives since 2012.

46.     In fact, ED leadership has placed a priority on isolating Ms. TallBear and minimizing her contributions to the DOE mission. For example, in February 2016, DOE's Office of General Counsel blocked a detail request to DOE's Energy Policy and Systems Analysis Office. Also, on March 18, 2016, a request for Ms. TallBear to attend a DOE meeting with the Montana Governor's Office as a tribal expert was denied.  Further, in or around June 2016, Ms. TallBear was not allowed to accept a detail to DOE's Office of Indian Energy to develop a "STEM Education and Energy Workforce in Indian Country" program, for which she had previously drafted the project plan.

47.     As a result of DOE's discriminatory conduct, DOE's callous response to Ms. TallBear's complaints, and the resulting retaliation, Ms. TallBear has suffered, and will continue to suffer, irreparable loss and injury, including, but not limited to, humiliation, embarrassment, mental and emotional distress, anxiety, and the diminishment of her career opportunities. In addition, since being stripped of her energy policy and tribal engagement focus on December 7, 2015, Ms. TallBear has taken approximately 150 hours of sick leave in the last twelve month period versus the previous twelve month period in which she used approximately 30 hours of sick leave.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Hostile Work Environment, in Violation of Title VII the Civil Rights Act Of 1964, As Amended)

48.     Ms. TallBear hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

49.     Ms. TallBear suffered a hostile work environment when, within the workplace and despite numerous requests and complaints, she was subjected to frequent use of racial slurs. In addition, Ms. TallBear was subject to repeated exposure to stereotypical images based on race and/or national origin.

50.     The use of these slurs and imagery both ridiculed and insulted the racial group in which Ms. TallBear is a member and was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment.

51.     Ms. TallBear did not tacitly or explicitly welcome this harassing conduct.

52.     The slurs and imagery singled out Native Americans and therefore constitute conduct because of Ms. TallBear's race and/or national origin.

53.     Responsible DOE officials had actual notice of the harassing conduct because of Ms. TallBear's repeated complaints about it.

54.     Responsible DOE officials expressly indicated that they would do nothing to mitigate the harassment and create a safe and lawful working environment for Ms. TallBear including taking such simple steps as sensitivity training.  Responsible DOE officials acted to create a safe working environment for other protected classes.

55.     DOE's lack of response to Ms. TallBear's complaints of discrimination was motivated because of Ms. TallBear's race and/or national origin.

56.     DOE's harassing conduct and its lack of response thereto constitutes a discriminatory hostile work environment in violation of 42 U.S.C. § 2000e.

57.     Because of this hostile work environment Ms. TallBear has suffered, and in the future will continue to suffer, irreparable loss and injury, including but not limited to, humiliation, embarrassment, and mental and emotional distress.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of Title VII of the Civil Rights Act Of 1964, As Amended)

58.     Ms. TallBear hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

59.     In violation of Title VII, the Department discriminated against Ms. TallBear because she made a charge of employment discrimination. Ms. TallBear engaged in protected activities including, but not limited to, attempting to raise awareness of the impacts that stereotypical images and racial slurs have on Native American federal employees, filing formal complaints within DOE, and filing an EEO complaint.

60.     As a result of Ms. TallBear's protected activities, DOE took adverse actions against Ms. TallBear, including, but not limited to, the following:

a.      Reassignment to significantly different responsibilities than those she had previously been assigned to perform;

b.      Exclusion from meetings and assignments which fell within the responsibilities outlined in the position description for her role;

c.      Postponement of attendance at Federal Executive Leadership Institute; and

d.      Denials of multiple detail opportunities.

61.     DOE has unlawfully retaliated against Ms. TallBear in violation of Title VII by taking a materially adverse employment action against her in response to protected activity.

62.     As a result of the Department's discriminatory and retaliatory actions, Ms. TallBear has suffered humiliation, embarrassment, psychological and emotional harm, severe emotional and psychological distress and damage to her career.

## PRAYER FOR RELIEF

WHEREFORE, Ms. TallBear hereby respectfully demands and prays for the following:

A.      A declaratory judgment that DOE's discriminatory practices have created a hostile work environment for Native American employees, including Ms. TallBear;

B.      A permanent injunction requiring DOE to take steps to foster an inclusive environment for Native American employees to the same extent that they do for other racial and/or national origin groups and preventing DOE from engaging in all retaliatory activities against Ms. TallBear;

C.      An order directing DOE to take the following actions:

a.      Reassign Ms. TallBear to a position that allows her to retain high level energy policy and stakeholder engagement work and to be able to conduct her education and sensitivity training efforts related to fostering an inclusive environment for Native American employees;

b.      Arrange for Ms. TallBear's attendance at the Federal Executive Institute training at the next available opportunity;

c.      Compensate Ms. TallBear for the annual and/or sick leave taken to conduct the speaking engagements during the 2015 Native American Heritage Month and as a result of the discriminatory actions herein;

D.      An award of actual, compensatory damages in an amount to be proven at trial;

E.      An award of attorneys' fees and costs; and

F.      For such other and further relief and the Court deems just, equitable, and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff requests a jury trial for all questions of fact raised by this Complaint.

Dated January 5, 2017          Respectfully submitted,

/s/ Venus McGhee Prince
Venus McGhee Prince (DC Bar No. 985717)
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW, Suite 900
Washington, DC  20005-2018
Phone: 202-824-1444
Fax: 202-379-3553
Email: vprince@kilpatricktownsend.com

Dennis A. Corkery (DC Bar No. 1016991)
Matthew K. Handley (DC Bar No. 489946)
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
Office: 202-319-1000

Email:  Dennis_Corkery@washlaw.org
        Matthew_Handley@washlaw.org

*Attorneys for Plaintiff Jody TallBear*